# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>AIRWAY INDUSTRIES, INC.,<br><br>    Debtor.<br><br>———————————————————<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>    Movant,<br><br>    v.<br><br>AIRWAY INDUSTRIES, INC.,<br>CERBERUS CAPITAL MANAGEMENT, L.P., MADELEINE, L.L.C.,<br><br>    Respondents. | Case No. 06-20224 JKF<br><br>Chapter 11<br><br><br><br>Relating to Docket No. 147<br><br><br><br>Hearing Date:  March 30, 2006 at 9:30 am |

**AIRWAY INDUSTRIES INC.'S RESPONSE TO MOTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 503, 541, 542 AND 105, DIRECTING THAT THE BONUSES FOR INSIDERS OF THE DEBTOR UNDER THE SUPPLEMENT TO THE SALE MOTION BE TURNED OVER TO THE DEBTOR'S ESTATE OR, IN THE ALTERNATIVE, DISALLOWING OR PROHIBITING PAYMENT OF THE <u>INSIDER BONUSES PURSUANT TO SECTION 503(c)</u>**

    Airway Industries, Inc. (the "<u>Debtor</u>"), by and through its undersigned counsel, hereby files this Response to the Motion by the Official Committee of Unsecured Creditor (the "<u>Committee</u>") for Entry of an Order, Pursuant to Sections 503, 541, 542 and 105, Directing that the Bonuses for Insiders of the Debtor Under the Supplement the Sale Motion be Turned Over to the Debtor's Estate or, in the Alternative, Disallowing or Prohibiting Payment of the Insider Bonuses pursuant to Section 503(c) (the "<u>Motion</u>") of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  In support thereof, the Debtor avers:

## PROCEDURAL BACKGROUND

1. On January 27, 2006, the Debtor filed a motion (the "Sale Motion") seeking entry of an order approving the sale of substantially all of its assets to TravelPro International, Inc. ("TPI").

2. On February 8, 2006, the Debtor filed a Supplement to the Sale Motion (the "Supplement") disclosing certain agreements between certain management employees of the Debtor and Cerberus Capital Management L.P. ("Cerberus") which provided, *inter alia*, for the payment of bonuses to those management employees as described in the Supplement (the "Proposed Bonuses").

3. The Committee and the United States Trustee (the "Trustee") both filed responses to the Sale Motion which, *inter alia*, objected to the Proposed Bonuses.

4. On February 23, 2006, the Committee's Motion was filed.

5. A hearing on the Sale Motion was held on February 27, 2006, and on February 28, 2006, an order of this Court was entered approving the sale to TPI.

6. On or about March 1, 2006, the closing on the sale to TIP occurred.

## FACTS

7. Both prepetition and postpetition, certain of the Debtor's management employees were critical to the Debtor's business operations, the sale process and preservation of the value of the Debtor's business. Those individuals are (a) William Berry ("Berry"), President, Chief Executive Officer and Secretary, (b) Grace Kurowska, ("Kurowska") Chief Financial Officer, (c) Brian Miller ("Miller"), Vice President of Sales/Marketing and (d) Gerald Carr ("Carr"), Senior Director of Finance (together, the "Management Employees").

8. Because of the uncertainty which existed as a result of the Debtor's financial situation and the sale process throughout 2005, Cerberus[1] and its affiliates became concerned that some or all of the Management Employees might leave their employment to the detriment of the Debtor and the value of its business.

9. In order to provide the Management Employees with incentive to remain in the employment of the Debtor at least until the sale of the Debtor's business or its assets (the "<u>Sale</u>"), whether inside or outside of a Chapter 11 case, Cerberus agreed to provide the Management Employees with the Proposed Bonuses.

10. The Proposed Bonuses are conditioned upon Cerberus receiving proceeds from the sale, the specific Management Employee being an employee of the Debtor in good standing immediately prior to closing on the Sale and are in the following amounts:

| | |
|---|---|
| Berry | $500,000 |
| Kurowska | $300,000 - $320,000[2] |
| Miller | $300,000 - $320,000[2] |
| Carr | $75,000 |

11. If earned, the Proposed Bonuses will be paid directly by Cerberus. The Debtor's assets will not be used to pay the Proposed Bonuses.

12. The Proposed Bonuses for Kurowska and Miller are reflected in written agreements with Kurowska and Miller, which also offer each of them an opportunity to enter into a mutually satisfactory arrangement to act as a consultant to the "Operations Team" of Cerberus and its affiliated companies for an annual fee equal to their respective annual salaries at Airway (the "<u>Potential Consulting Arrangements</u>") if certain conditions are satisfied.

---

[1] Certain affiliates of Cerberus are the Debtor's largest shareholders and/or lenders to the Debtor.

[2] Kurowska and Miller are to receive the greater of (a) $300,000 and (ii) 4% of the amount by which the net proceeds of distributions to Cerberus from the Sale exceed $14.6 million, up to a maximum of $320,000.

13. Although he does not have a written agreement with Cerberus, Berry also has been offered the opportunity for a Potential Consulting Arrangement on the same basis as Kurowska and Miller.[3]

14. The Management Employees had been advised of their fiduciary duties to all of the Debtor's creditors. Further, the written agreements between Kurowska, Miller and Cerberus specifically provide that they are to carry out their fiduciary duties "regardless of whether those duties would conflict with any duties owed to, or the interests, of Cerberus." And, as the testimony of Grace Kurowska at the February 27, 2006, hearing approving the Sale proved, the Management Employees at all times have operated in accordance with their fiduciary duties owed to the Company and all of its creditors.

15. Said testimony also established that if the Management Employees had left their employment prior to the closing on the Sale, the value of the Debtor's assets and estate would have been greatly reduced.

**ARGUMENT I: SECTION 503(c) IS INAPPLICABLE.**

16. Section 503(c) is inapplicable in this case for the simple reason that the Proposed Bonuses do not constitute administrative expenses. Section 503 of the Bankruptcy Code concerns the "Allowance of Administrative Expenses". Section 503(c) specifically deals with the conditions that have to be met in order for administrative expenses arising under the Key Employee Retention Plans adopted by debtors' ("KERPs") to be allowed.

---

[3] Carr does not have a written agreement with Cerberus. Further, the Debtor understands that Cerberus has not provided him with an opportunity for a Potential Consulting Arrangement. Mr. Carr was not an officer of the Debtor and was not involved in the decision-making process with regard to the sale of the Debtor's business. Since the closing on this sale to TPI, Mr. Carr has been appointed as the Responsible Officer of the Debtor to lead the Debtor's wind-down and its efforts to confirm a plan of liquidation.

4

17. Generally, administrative expenses are obligations incurred by a debtor postpetition. Section 503 only applies to claims arising against the Debtor, not to claims against a non-debtor third party.

18. Section 503(c) was adopted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 in an effort to deal with the effect that large administrative claims arising pursuant to KERPs have on debtors' estates.

19. *In re U.S. Airways, Inc.,* 329 B.R. 793, 797 (E.D. VA 2005), cited by the Committee, notes that the primary concern with KERPs is an unwarranted depletion of the debtor's estate at the expense of the creditors:

> All too often [KERPs] have been used to lavishly reward – <u>at the expense of the creditor body</u> – the very executives whose bad decisions or lack of foresight were responsible for the debtor's financial plight. (Emphasis added.)

20. Those concerns simply are not present in the instant case. The Proposed Bonuses are not administrative claims against the Debtor's estate, and estate assets will not be used to pay the Proposed Bonuses.

21. Here, there is no expense to the creditor body. The Committee's attempt to apply Section 503 to this situation completely ignores this fact and the ultimate purpose of the statute.

22. The Committee's attempt to expand the meaning and intent of Section 503 beyond logic in this manner requests an unprecedented[4] and overbroad blanket application of Section 503 by this Court. By encouraging a blind application of Section 503(c) in the face of contrary statutory intent, the Committee rejects the more tempered and reasonable judicial

---

[4] In its objection to the sale Motion, the Trustee admitted that "Section 503(c) is an entirely new provision to the Bankruptcy Code and as of the date of filing this objection, no cases interpreting this provision have been found by the undersigned." (Docket No. 92)

5

approach of creating precedent through a thorough judicial examination of the facts and statutory intent on a case-by-case basis. The reason is obvious. Such an examination here can result only in a finding that Section 503 simply has no application to the present situation.

## ARGUMENT II: **TURNOVER IS INAPPROPRIATE**.

23. The Committee Motion seeks to expand the misguided application of Section 503, together with Sections 541, 542 and 105, to require the forfeiture of these third party *non-estate* funds to the debtor's estate. Again, no authority exists that would allow such a result.

24. The Committee's argument attempts to assert that somehow these post-sale third party payments deprive the estate of funds because the funds would otherwise be available to be distributed to the unsecured creditors. Such claim is unsupportable in fact or logic.

25. This Court will determine whether or not Cerberus is entitled to receive *any* estate funds. The Proposed Bonuses will be paid by Cerberus only after, and only if, this Court makes the determination that Cerberus has the right to the funds and Cerberus receives those funds. No authority exists to prevent Cerberus from doing what it chooses to do with any funds received (i.e. its own property). Further, such payment by Cerberus will have no impact on the distribution to other creditors.

26. The Committee's attempt to cite *In re Dalow Industries, Inc.*, 333 B.R. 640 (Bankr. E.D. N.Y. 2005) as the one and only case to support its claim falls woefully short of its mark. In *Dalow,* a good-faith arms'-length bargain was struck between the debtor and the high-bid purchaser at auction. As part of the transaction, the purchaser was to pay $10,500,000 total, with $8,705,367.20 of such total to be paid directly to a bank to satisfy its secured claim. It was later discovered that the bank had overstated its claim by $65,054.55. There was no provision to reduce (or increase) the total sales price should the secured claim prove inaccurate. The direct

6

payment was arranged merely to ease the distribution process by permitting the bank to release its lien. *Id.* at 641-642.

27. The *Dalow* Court held that the overpayment was to be paid to the estate because it was merely part of the $10,500,000 negotiated price which the parties agreed "constituted fair and adequate consideration and reasonably equivalent value for the Assets." *Id.* at 643. Construing the Sale Order pursuant to general contract principles, the court noted that there were no terms which provided for the repayment to the purchaser of any erroneous interest payments and, just as here, *there was no indication that how the money was to be distributed affected the ultimate price.* As such, all of the $10,500,000 payment, including the $65,054.55, was property of the estate.

28 In sum, *Dalow* merely stands for the proposition that arms-length contracts are to be upheld. Similarly, the Proposed Bonuses, which have no effect on creditor disbursements and no adverse effect on the estate, should be upheld.

29. Under Section 542 of the Bankruptcy Code, the party seeking the turnover of property must establish that the property in question actually *is* property of the estate which is in the possession, custody, or control of an entity other than the debtor, trustee or debtor-in-possession. *See U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 206, 103 S.Ct. 2309 (1983). The Committee is unable to satisfy that burden.

30. With regard to any funds to be used to pay the Proposed Bonuses, the estate has neither a legal nor equitable interest in the property under Section 541. The Proposed Bonuses will be paid with Cerberus' own property, not property of the estate.

7
DM1\584357.1

## ARGUMENT III: THE PROPOSED BONUSES HAVE HAD A POSITIVE IMPACT ON THE DEBTOR'S ESTATE.

31. Testimony both at the sale hearing and at depositions conducted prior to the sale hearing evidences the fact that the Proposed Bonuses had a positive impact on the Debtor's estate.

32. The agreements with regard to the Proposed Bonuses were made because of concerns that the employees who were essential to preserving the value of the Debtor's business might leave the Debtor at a critical time unless they were given sufficient incentive to stay. Kurowska, Miller and Carr had, in fact, been approached by the former president of the Debtor to join him at his new company.

33. The agreements with Cerberus allowed the Management Employees to remain with the Debtor at no additional cost to the Debtor or depletion of the Debtor's estate.

34. Value of the Debtor's business was maintained, and the Debtor's assets were sold for $17.5 million creating significant proceeds to be distributed to creditors.

WHEREFORE, the Debtor respectfully requests that the Committee's motion be denied and the payment of the Proposed Bonuses be approved.

Dated: March 20, 2006　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 /s/ Joel M. Walker
　　　　　　　　　　　　　　　　　　　　　　Joel M. Walker, PA I.D. No.: 26515
　　　　　　　　　　　　　　　　　　　　　　Duane Morris LLP
　　　　　　　　　　　　　　　　　　　　　　600 Grant Street, Suite 5010
　　　　　　　　　　　　　　　　　　　　　　Pittsburgh, PA  15219
　　　　　　　　　　　　　　　　　　　　　　(412) 497-1000

　　　　　　　　　　　　　　　　　　　　　　Counsel for the Debtor

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 20th day of March 2006, I served or caused to be served a copy of the foregoing via first-class, postage prepaid, regular U.S. mail upon the parties listed on the attached mailing matrix.

/s/ Joel M. Walker
Joel M. Walker

Norma Hildenbrand, Esquire
Office of the U.S. Trustee
9th Floor, Liberty Center
1001 Liberty Avenue
Pittsburgh, PA  15219

Deborah C. Phillips, Esquire
Department of Labor & Industry
914 Penn Avenue, 6th Floor
Pittsburgh, PA  15222

Joel Helmrich, Esquire
Meyer, Unkovic & Scott LLP
1300 Oliver Building
535 Smithfield Street
Pittsburgh, PA  15219

Richard A. Levy, Esquire
Caroline Reckler
Latham & Watkins, LP
Sears Tower, Suite 5800
Chicago, IL  60606

Lawrence C. Gottlieb, Esquire
Adam Rogoff, Esquire
Kronish Lieb Weiner & Hellman LLP
1114 Avenue of the Americas
New York, NY  10036-7798

Robert C. Edmundson, Esquire
PA Department of Revenue
564 Forbes Avenue, 6th Fl.
Pittsburgh, PA  15219

Teachers Insurance and Annuity
Association of America
Attention:  Sharon Manewitz
730 Third Avenue
New York, NY  10017

Phil Uher, Esquire
Brian Lawton, Esquire
Metz Lewis LLC
11 Stanwix Street, 18th Floor
Pittsburgh, PA  15222

Edward L. Laubach, Jr., Esquire
Senior Attorney
Internal Revenue Service
1001 Liberty Avenue
Pittsburgh, PA  15222

James F. Grenen, Esquire
Grenen & Birsic, P.C.
One Gateway Center, 9th Floor
Pittsburgh, PA  15222

Schuyler G. Carrol, Esquire
Robert M. Hirsch, Esquire
George P. Angelich, Esquire
Arent Fox PLLC
1675 Broadway
New York, NY  10019

Lawrence Gelber, Esquire
Howard O. Godnick. Esquire
Schulte Roth & Zebel, LLP
919 Third Avenue
New York, NY  10022

Gilbert B. Weisman, Esquire
Becket and Lee LLP
POB 3001
Malvern, PA  19355

Raymond M. Patella, Esquire
Blank Rome LLP
One Logan Square
Philadelphia, PA  19103

Steven S. Santoro, Esquire
Gefsky and Lehman, P.C.
2301 One PPG Place
Pittsburgh, PA  15222

Howard N. Gorney, Esquire
c/o Nixon Peabody LLP
100 Summer Street
Boston, MA  02110

Renee F. Bergmann, Esquire
Nixon Peabody LLP
1818 Market Street, 11th Floor
Philadelphia, PA  19103

Libra Securities
11766 Wilshire Blvd., Ste. 870
Los Angeles, CA  90025

U.S. Bancorp
Attention:  Daniel Spiller
800 Nicollet Mall
Mail Code BC-MN-H18T
Minneapolis, MN  55402

Gary Cerrone
106 Pinto Court
Bethel Park, PA  15102

J. Richard Abraham
85 Quail Hill Lane
Pittsburgh, PA  15238

John Pietro
170 Topaz
Canton, OH  44406